No. 23,144.

ESTHER M. SMITH, *Appellee*, v. CAMERON SMITH and AMELIA A. SMITH, *Appellants*.

SYLLABUS BY THE COURT.

1. *Action to Cancel Contract Relating to Land—Homestead Rights.* The claim of the plaintiff to a homestead right in the land in controversy is not greater than that of the defendants who have occupied it as their home for over seventeen years.

2. SAME—*Defendants' Rights Under Contract Not Forfeited.* Under the evidence and the facts found by the trial court the defendants are entitled to a continuation of the arrangement touching the property covered by the contract involved herein.

3. SAME—*Cause Remanded With Directions to Enter Decree as Indicated.*
The cause is remanded with directions to enter a decree as indicated
in the opinion and to retain jurisdiction with power to modify.

Appeal from Marion district court; ROSWELL L. KING, judge.
Opinion filed October 8, 1921. Reversed.

*Frank L. Martin, John M. Martin,* and *James N. Farley,* all
of Hutchinson, for the appellants.

*Sam Jones,* of Lyons, *John E. Wheeler, W. H. Carpenter,*
and *W. R. Carpenter,* all of Marion, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff, Esther M. Smith, brought this suit
against her son, Cameron Smith, and his wife, to set aside a
contract by which she had agreed to will to the son 80 acres
of land, or in case of his death before hers, to his children sub-
ject to a life estate therein to his wife, he to live on the land
and care for it. She claims that the defendants had made life
unbearable in her home and asks that she be given possession
of the land to their exclusion.

The answer among other things alleged that seventeen years
before the beginning of this suit the son made a verbal contract
that he should live at home on the farm, take full charge of the
work and personal property and operate the farm for his father
and mother and at their death receive as compensation for
his services the full legal title to the farm consisting of 160
acres; or if he should die preceding his parents, the title to go
to his children, subject to a life estate to his wife; and that
after the father's death, the contract was changed so that a
brother was to have one 80 and the defendant, Cameron Smith,
the other. It was further alleged that the defendant carried
out his part of the agreement faithfully, and that the mother
had made the will as agreed to, but had later revoked it; that
two grandchildren had made their home on the place and that
the defendant had cared for them.

The court made findings of facts and conclusions of law by
which it appears that the plaintiff and her husband engaged
for many years in farming and accumulated a quarter section
of land. The son, Curtis, did not remain at home after his

majority, but married and went away. The defendant, Cameron, desired to enter other work, but his father was in bad health and it was verbally agreed between the three that he should remain at home, work on the farm, pay up the personal debts, and at the death of his parents have the farm and all the personal property; and in the spring of 1892, he entered upon the performance of this contract. He was married in 1905, and brought his wife home to the farm where she did her full share of the work. Three children were born to them. In 1906, the father died, leaving thirteen head of horses and colts and some other stock, and farm implements worth about $2,500. There was a mortgage on the farm of $2,100, and one on the personal property of $1,100. By oral agreement between the mother and the defendant, Cameron, the former contract was modified so that the north 80 should go to Curtis and the south 80 to Cameron. February 26, 1917, a written contract to this effect was entered into between the mother and Cameron, and the mother made a will to that effect which she deposited in the office of the probate court of Marion county. In September, 1917, the plaintiff became ill and was taken to a hospital in Kansas City for a surgical operation. Before this and up to the fall of 1918, the parties lived together agreeably on the farm and without any serious trouble or dispute. In 1919, the mother's attitude changed and she charged Cameron with holding out her money; with falsehood touching her checks on the bank; with having begun to take advantage of her; with having subjected her to the operation in hopes she would not survive; all of which charges were without foundation; and after this suit was begun quarrels and bad language and slanderous remarks occurred and bad blood arose between the parties. Also,—

"14. About the time of the bringing of this action the plaintiff repudiated the contract and procured from the probate court the will that she had deposited there for the purpose of carrying out the same, and burned or destroyed it.

"15. The defendant, Cameron Smith, from 1902 has faithfully performed the contract on his part for 17 years and up to the time the same was abandoned and repudiated by the plaintiff and has raised crops in a good and farmer-like manner and paid off the mortgages on the farm and personal property out of the proceeds of said crops.

"16. The farm machinery and personal property that was on hand at the time the performance of the contract in question was commenced

Smith v. Smith.

in 1902, has been worn out or disposed of and replaced out of the proceeds of crops that were raised on the farm in question since said time, and at the time of the repudiation of the contract in question said personal property consisted of horses, cows, farm implements, tractor, automobile, household furniture, savings stamps and bonds of the total value of about $4,000.00 and said farm was at said time of the value of $25,000.00, and the north 80 of same of the value of $13,000.00.

"17. That since the repudiation of said contract, the defendant, Cameron Smith, has planted and growing on said farm, 70 acres of wheat, 20 acres of oats and 24 acres of corn.

"18. That at the time of the repudiation of the contract the plaintiff was about 65 years old and her expectancy of life 11 years.

"19. At about the time or after the bringing of this suit, the plaintiff, Esther M. Smith, moved into a little house on the farm in question and situated or located nearby the dwelling house thereon, theretofore occupied by herself and the defendant. And that she now lives in said house on said farm."

As conclusions of law the court found—

"1. The plaintiff is not entitled to have the contract in question canceled or rescinded.

"2. The court should not compel the specific performance of the contract in question by the parties thereto. That the equities in the property, real and personal, should be adjusted between said parties on the basis of the time that said contract was performed as compared with the expectancy of the life of Esther M. Smith at the time of her breach or abandonment of said contract.

"3. That the defendant, Cameron Smith, be allowed 17/28 of the value of the south 80 of the farm in question and amounting to $7,892.85 and the same be made a lien upon the same and due and payable at the death of Esther M. Smith.

"4. If the contract in question had been fully performed to the death of Esther M. Smith, Cameron Smith would be entitled to whatever personal property she then owned, subject to the payment of her debts as to the amount and value of the same at the time. We have no way of knowing if the contract had not been breached and Cameron Smith had continued in the farming and managing of the farm in question to the death of Esther M. Smith, and in view of the crops and the proceeds from the same prior to the breach of the same, there is good reason to believe that the amount and value of such personal property would not be less than the amount and value at the present time, to-wit: $4,000.00, and that Cameron Smith should be allowed 17/28 of said value, or $2,428.57, same to be due and payable out of the estate of Esther M. Smith after her death.

"5. That the crops planted on the farm in question by Cameron Smith since the breach of the contract in question, should be settled for on the basis of rents or share of said crops when gathered or harvested. That Cameron have half of said crops and that he deliver the other half of said crops to Esther M. Smith and that Cameron Smith be allowed to

retain the possession of the farm in question for the purpose of harvesting, cultivating and gathering said crops and to date not longer than January 1st, 1921, at which time his right to the possession of said farm or any part thereof is to cease and determine and to be surrendered to Esther M. Smith, together with the possession, all personal property of every nature and kind owned by Esther M. Smith."

The defendants appeal and while no criticism of the findings of fact is made, the conclusions of law are met with the claim that they are not equitable, and counsel suggest various changes which they think should be made therein.

The plaintiff argues that the court found that on account of bad blood the parties could not live together on the farm for the purpose of carrying out the contract and that the amount awarded the son by the court is sufficient to compensate him for the work and services performed under the terms of the written contract. It is suggested that as long as she is living the mother is entitled to her homestead and that no court can deprive her of this constitutional right.

The findings of fact show that for seventeen years Cameron Smith faithfully carried out the terms of the contract he had made with his parents, and later modified by agreement with his mother, and that not until her hospital experience did she turn against him. There is nothing to indicate that she was in anywise justified in the charges she made against him, but on the contrary it is expressly found that such charges were without foundation; hence, in all these matters he was without fault, and the mutual bad blood and recriminations which rendered it, as the court found, impossible for the parties to live together seem to have been on account of the mother's changed disposition towards the son and her unfounded charges against him.

We do not perceive that the homestead question is involved, for the land in controversy is as much the homestead of the defendants as of the plaintiff and has been for many years.

The unfortunate change of disposition wrought upon the mother, evidently by her sickness and operation, while lamentable in the extreme, does not make a just ground for depriving the son of his rights under the contract or of the proceeds of his industry during the long term of years he has been in charge of the farm. We are unable to agree with the trial court as to the equitable requirements of the situation, but

upon the findings of fact we have after due consideration reached the conclusion that a different decree should be rendered.

The decree is reversed and the cause remanded with directions to enter a decree to the effect: First, that the defendant be permitted to remain in possession of the farm, and operate it in accordance with the terms of the contract heretofore entered into between the defendant, Cameron M. Smith, and his parents, as later modified by the contract with his mother; should the plaintiff prefer to live apart from the defendants, that she be permitted to live elsewhere on the farm or at any other reasonable place selected by her. Second, that upon the death of the plaintiff the south 80 of the quarter section involved and the personal property shall go to Cameron Smith, or in case he should not be living at that time, such real and personal property to go to his children subject to a life estate to his wife, Amelia A. Smith, such life estate to cease in case she should marry again. Third, that the trial court retain jurisdiction of the cause and of the parties thereto with power to modify the decree from time to time as circumstances may require.